1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JULIE M. ALVARADO,                    )   Case No. EDCV 08-116 JC
                                      )
                 Plaintiff,           )
                                      )   MEMORANDUM OPINION
         v.                           )
                                      )
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social                )
Security,                             )
                                      )
                 Defendant.           )
_____     )

## I.    SUMMARY

On February 7, 2008, plaintiff Julie M. Alvarado ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's application for benefits.  The parties have filed a consent to proceed
before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; February 8, 2008 Case Management Order, ¶ 5.

///

1

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6    On August 30, 2005, plaintiff filed an application for Supplemental Security

7    Income benefits.  (Administrative Record ("AR") 9, 15).  Plaintiff asserted that she

8    became disabled on June 26, 1991, due to varicose veins in both legs and back

9    disorders, including a spinal fusion.  (AR 12, 15, 58).  The ALJ examined the

10   medical record and heard testimony from plaintiff, who was represented by

11   counsel, on September 24, 2007.  (AR 114-121)

12   On September 27, 2007, the ALJ determined that plaintiff was not disabled

13   through the date of the decision.  (AR 9-14).  Specifically, the ALJ found:

14   (1) plaintiff suffered from a severe impairment involving the musculoskeletal

15   system (AR 11); (2) plaintiff's impairment or combination of impairments did not

16   meet or medically equal one of the listed impairments (AR 11)); (3) plaintiff

17   retained the residual functional capacity to perform light work (AR 11);[2]

18   (4) plaintiff had no past relevant work (AR 13); (5) there are jobs that exist in

19   significant numbers in the national economy that plaintiff could perform; and

20   (6) plaintiff's statements concerning the intensity, persistence, and limiting effects

21   of her symptoms were not entirely credible (AR 13).

22   ///

23

24   [1]The harmless error rule applies to the review of administrative decisions regarding
25   disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196
     (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social
26   Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of
     application of harmless error standard in social security cases).
27

28   [2]The ALJ determined: (i) plaintiff could lift and/or carry 10 pounds frequently and 20
     pounds occasionally; (ii) out of an 8-hour period, plaintiff could stand and/or walk for 6 hours
     and sit for 6 hours; and (iii) plaintiff could occasionally bend, stoop, and twist.  (AR 11).

1  On December 20, 2007, the Appeals Council denied plaintiff's application
2  for review.  (AR 2-4).

3  **III.   APPLICABLE LEGAL STANDARDS**

4      **A.     Sequential Evaluation Process**

5      To qualify for disability benefits, a claimant must show that she is unable to

6  engage in any substantial gainful activity by reason of a medically determinable

7  physical or mental impairment which can be expected to result in death or which

8  has lasted or can be expected to last for a continuous period of at least twelve

9  months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.

10  § 423(d)(1)(A)).  The impairment must render the claimant incapable of

11  performing the work she previously performed and incapable of performing any

12  other substantial gainful employment that exists in the national economy.  Tackett

13  v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

14      In assessing whether a claimant is disabled, an ALJ is to follow a five-step

15  sequential evaluation process:

16      (1)    Is the claimant presently engaged in substantial gainful activity?  If
17              so, the claimant is not disabled.  If not, proceed to step two.

18      (2)    Is the claimant's alleged impairment sufficiently severe to limit
19              her ability to work?  If not, the claimant is not disabled.  If so,
20              proceed to step three.

21      (3)    Does the claimant's impairment, or combination of
22              impairments, meet or equal an impairment listed in 20 C.F.R.
23              Part 404, Subpart P, Appendix 1?  If so, the claimant is
24              disabled.  If not, proceed to step four.

25      (4)    Does the claimant possess the residual functional capacity to
26              perform her past relevant work?[3]  If so, the claimant is not
27              disabled.  If not, proceed to step five.

28

---

[3]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence."  20 C.F.R. § 416.945(a).

1
2
3
4
5

      (5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

6
7

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

8
9
10
11

      The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

12

      **B.**    **Standard of Review**

13
14
15
16
17
18
19
20
21

      Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

22
23
24
25
26
27
28

      To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

1  **IV.    DISCUSSION**

2      **A.    Treating Physician's Opinion**

3        Plaintiff contends that the ALJ erroneously failed to consider the opinion of

4  her treating physician, Dr. Ashok Melvani.  (Plaintiff's Motion at 2-3).  This Court

5  finds no material error in the ALJ's assessment of the medical opinion pertaining

6  to plaintiff's back impairments and limitations, and finds that the ALJ's

7  assessment of plaintiff's residual functional capacity is supported by substantial

8  evidence.

9        **1.    Relevant Facts**

10        From August 30, 2004 through August 23, 2007, plaintiff sought ongoing

11  treatment from Dr. Melvani for, *inter alia*, lower back pain.  (AR 91-101, 112-13).

12  While Dr. Melvani assessed plaintiff to have chronic lower back pain on several

13  occasions, Dr. Melvani's suggested course of treatment was conservative, in that

14  he only prescribed pain medications to plaintiff.  (AR 91, 94, 96, 98-99, 101, 112).

15  Dr. Melvani's treatment notes do not reflect that plaintiff has functional

16  limitations on her ability to work.  (AR 91-101, 112-13).

17        On November 3, 2005, Dr. Concepcion A. Enriquez, performed an internal

18  medicine consultation on plaintiff.  (AR 102-06).  After examining plaintiff and

19  reviewing plaintiff's medical record, Dr. Enriquez noted:

20           The patient presents with a history of back pain since she was

21      in the fifth grade.  She was told she has scoliosis at that time.  She

22      went to a chiropractor and the diagnosis of scoliosis was confirmed.

23      Physical therapy was done until 1993 however she continued to have

24      pain and in 1993, she had surgery on her back.  She still has back pain

25      that radiates to her neck and down to her legs, aggravated by being in

26      one position for a long period of time and is relieved by changing

27      positions . . . .  On examination, there is tenderness and decreased

28

1    range of motion on the lumbosacral spine area . . . . The patient does not

2    need any assistance in ambulation.

3 (AR 102, 105).

4    As to plaintiff's functionality, Dr. Enriquez stated:

5       The patient can occasionally lift and/or carry 20 pounds and

6    frequently lift and/or carry 10 pounds.  The patient can stand and/or

7    walk with normal breaks for six hours in an eight-hour workday.  The

8    patient can sit with normal breaks for six hours in an eight-hour

9    workday. [¶] The patient can do occasional bending, stooping and

10    twisting.

11 (AR 106).  Dr. Enriquez concluded that plaintiff could perform light work.  <u>See</u>

12 20 C.F.R. § 416.967(b).

13    At Dr. Enriquez's request, an x-ray was taken of plaintiff's lumbar spine.

14 (AR 107).  Radiologist Dr. Lawrence Resnick reviewed the x-ray and, in a report

15 dated November 3, 2005, opined that plaintiff had, "degenerative disease from L1

16 to L3 associated with a 35° scoliotic curve." (AR 107).  Dr. Resnick also noted

17 that plaintiff's "vertebral bodies [were] normal in height," and that her

18 "Harrington rods [were] in place."  (AR 107).

19      **2.   Applicable Law**

20    In Social Security cases, courts employ a hierarchy of deference to medical

21 opinions depending on the nature of the services provided.  Courts distinguish

22 among the opinions of three types of physicians:  those who treat the claimant

23 ("treating physicians") and two categories of "nontreating physicians," namely

24 those who examine but do not treat the claimant ("examining physicians") and

25 those who neither examine nor treat the claimant ("nonexamining physicians").

26 <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A

27 treating physician's opinion is entitled to more weight than an examining

28 physician's opinion, and an examining physician's opinion is entitled to more

1   weight than a nonexamining physician's opinion.[4]   See id.   In general, the opinion

2   of a treating physician is entitled to greater weight than that of a non-treating

3   physician because the treating physician "is employed to cure and has a greater

4   opportunity to know and observe the patient as an individual." Morgan v.

5   Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.

6   1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

7       The treating physician's opinion is not, however, necessarily conclusive as

8   to either a physical condition or the ultimate issue of disability. Magallanes v.

9   Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d

10   759, 761-62 & n.7 (9th Cir. 1989)).   Where a treating physician's opinion is not

11   contradicted by another doctor, it may be rejected only for clear and convincing

12   reasons.   Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal

13   quotations omitted).   The ALJ can reject the opinion of a treating physician in

14   favor of a conflicting opinion of another examining physician if the ALJ makes

15   findings setting forth specific, legitimate reasons for doing so that are based on

16   substantial evidence in the record. Id. (citation and internal quotations omitted);

17   Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by

18   setting out detailed and thorough summary of facts and conflicting clinical

19   evidence, stating his interpretation thereof, and making findings) (citations and

20   quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite

21   "magic words" to reject a treating physician opinion – court may draw specific

22   and legitimate inferences from ALJ's opinion).   "The ALJ must do more than offer

23   his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He

24   must set forth his own interpretations and explain why they, rather than the

25   [physician's], are correct." Id. "Broad and vague" reasons for rejecting the

26   _____

27       [4]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to

28   draw bright line distinguishing treating physicians from non-treating physicians; relationship is
    better viewed as series of points on a continuum reflecting the duration of the treatment
    relationship and frequency and nature of the contact) (citation omitted).

1 | treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599,
2 | 602 (9th Cir. 1989).

3 | **3.    Analysis**

4 | Plaintiff contends that the ALJ failed to consider Dr. Melvani's opinion that
5 | plaintiff suffered from chronic lower back pain.  (Plaintiff's Motion at 2).  This
6 | contention is belied by the record.  In his decision, the ALJ stated, in pertinent
7 | part:

8 | The claimant underwent spinal fusion with Harrington rod in
9 | 1993 for scoliosis.  **Her current orthopedic treatment appears to**
10 | **be minimal, conservative and sufficient** . . . .  The [consultative]
11 | examiner concluded that claimant could lift/or carry 10 pounds
12 | frequently and 20 pounds occasionally.  Out of an 8-hour period, she
13 | could stand and/or walk for 6 hours and sit for 6 hours.  She could
14 | occasionally bend, stoop, and twist. [¶] I give great weight to the
15 | opinion of the consultative examiner.  The doctor performed a
16 | detailed and thorough examination of the claimant and his opinion is
17 | well supported by the findings.

18 | (AR 12-13) (emphasis added).

19 | Although the ALJ did not refer to Dr. Melvani by name, it is reasonable to
20 | infer from the record that the ALJ was referring to plaintiff's treatment by Dr.
21 | Melvani in the bolded language above.  The ALJ's decision thus reflects that the
22 | ALJ considered Dr. Melvani's treatment records (and any opinions contained
23 | therein) in making his disability determination.

24 | This Court further notes that Dr. Enriquez's report and opinion, which the
25 | ALJ expressly referenced, also reports that plaintiff suffered from chronic back
26 | pain.  (AR 102, 105).  Such doctor's opinion is consistent with Dr. Melvani's
27 | reports.  Dr. Enriquez's opinion regarding plaintiff's functionality – which the
28 | ///

1  ALJ adopted – takes such pain into account.  The record does not reflect that
2  plaintiff's treating physician disagreed with this assessment.
3      Accordingly, plaintiff is not entitled to a remand or reversal based upon the
4  ALJ's alleged failure to consider Dr. Melvani's opinion.
5          **B.    Plaintiff's Credibility**
6      Plaintiff alleges that the ALJ erred in rejecting plaintiff's testimony
7  concerning her alleged limitations without adequate reasons.  (Plaintiff's Motion
8  3-6).  This Court disagrees.
9              **1.    Applicable Law**
10     An ALJ is not required to believe every allegation of disabling pain or other
11 non-exertional impairment.  Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d
12 597, 603 (9th Cir. 1989)).  If the record establishes the existence of a medically
13 determinable impairment that could reasonably give rise to symptoms assertedly
14 suffered by a claimant, an ALJ must make a finding as to the credibility of the
15 claimant's statements about the symptoms and their functional effect.  Robbins,
16 466 F.3d 880 at 883 (citations omitted).  Where the record includes objective
17 medical evidence that the claimant suffers from an impairment that could
18 reasonably produce the symptoms of which the claimant complains, an adverse
19 credibility finding must be based on clear and convincing reasons.  Carmickle v.
20 Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir.
21 2008) (citations omitted).  The only time this standard does not apply is when
22 there is affirmative evidence of malingering.  Id.  The ALJ's credibility findings
23 "must be sufficiently specific to allow a reviewing court to conclude the ALJ
24 rejected the claimant's testimony on permissible grounds and
25 did not arbitrarily discredit the claimant's testimony."  Moisa v. Barnhart, 367
26 F.3d 882, 885 (9th Cir. 2004).
27     To find the claimant not credible, an ALJ must rely either on reasons
28 unrelated to the subjective testimony (e.g., reputation for dishonesty), internal

9

contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (e.g., daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; SSR 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment. Burch, 400 F.3d at 681.

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

### 2. Analysis

Here, the ALJ stated sufficient reasons for rejecting plaintiff's testimony. While discussing the evidence of plaintiff's medically-determinable impairments, the ALJ summarized plaintiff's subjective complaints made at the hearing, in her disability application, and as reflected in the various medical records. (AR 13, 44, 58, 117-19). Ultimately, the ALJ refused to find greater limitations than those he adopted, reasoning as follows:

> After considering the evidence of record, I find that claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. The claimant had recent dilation and curettage (D&C) with no evidence of malignancy. She made an uneventful recovery and had no additional gynecological extremity, which has resolved and the claimant is awaiting vein stripping and

1   ligation for the right lower extremity.  The claimant's testimony
2   establishes no different conclusions.  She asserted back surgery in
3   1993 for scoliosis, back pain and a rather bizarre and nonanatomical
4   complaint of numbness in the entire right side of the body from head
5   to the feet.  The claimant asserted lying down all day and medication
6   side effects.  These are not documented in the medical records.  The
7   claimant's current medications have been used for substantial periods
8   of time which raises inferences of efficacy and toleration.  There are
9   multiple other medications in the nonsteroidal anti-inflammatory and
10  analgesic armamentaria which could be used should present
11  medications ever prove ineffective or possessive of untoward side
12  effects.

13  (AR 13).

14          As noted by the above, the ALJ rejected plaintiff's statements for at least
15  two articulated reasons:  (1) the conflict between her statements and her conduct,
16  *i.e.* the fact that she did not report to her doctor that she was unable to do anything
17  other than lie down all day or that she had side effects from her medication; and
18  (2) the lack of objective support in the medical records for the asserted limitations.
19  The ALJ also noted, as discussed above, that plaintiff received minimal
20  conservative treatment – a finding from which this Court infers that the ALJ also
21  viewed plaintiff's assertion that her back pain was disabling as inconsistent with
22  her conservative treatment.  The reasons articulated by the ALJ for discounting
23  plaintiff's credibility constitute permissible clear and convincing reasons, which
24  are supported by substantial evidence in the record.

25          Accordingly, plaintiff is not entitled to a reversal or remand on this claim.
26  ///
27  ///
28  ///

11

1

## C. Medication Side Effects

2      Plaintiff contends that a remand or reversal is warranted because the ALJ

3  erroneously failed properly to evaluate evidence regarding plaintiff's reported side

4  effects of her medications.  (Plaintiff's Motion at 6-8).  This Court disagrees.[5]

5                    ### 1. Pertinent Facts

6      In a "Disability Report Adult," plaintiff alleged that the following

7  medications caused the indicated side effects:  (a) Baclofen, taken for pain, causes

8  dizziness, laziness and headaches; (b) Darvocet, taken for pain, causes nausea; and

9  (c) Ibuprofen, taken for pain, causes dizziness and tiredness.  (AR 62-63).

10  Notably, plaintiff indicated that she suffered no side effects from Hydrocodone

11  and Naproxen.  (AR 63).  Thereafter, in a  "Disability Report-Appeal" form,

12  plaintiff indicated that she was taking only Hydrocodone, which caused her no

13  side effects.  (AR 43).  However, in the same form, plaintiff stated, "the drugs [I]

14  take make me very tired and grumpy."  (AR 44).  During the hearing, plaintiff

15  testified that she takes Vicodin, Darvocet, Baclofen, Neurontin, Ibuprofen, and

16  unspecified muscle relaxers and sleep aids.  (AR 118).  As to side effects caused

17  by these medications, plaintiff testified that she feels tiredness, moodiness, and

18  "being off balance with being awake during the day."  (AR 118).

19      Despite plaintiff's reports and testimony, the record does not reflect that

20  plaintiff ever made these complaints to any of her treating physicians.  (AR 70-

21  102, 108-13).  Additionally, plaintiff never conveyed any such complaints to the

22  consultative physician.  (AR 102-06).

23      As noted above, the ALJ stated the following regarding plaintiff's

24  medication side-effects:

25  ///

26  

27      [5]Plaintiff also asserts that the ALJ did not consider the alleged common side effects of her
28  medications as indicated in a guide to prescription drugs.  Plaintiff cites no authority to support
the proposition that the ALJ was required to consider common side effects of plaintiff's
medications in the absence of allegations by plaintiff that she suffered from such side effects.

1    The claimant asserted lying down all day and medication side

2    effects.  These are not documented in the medical records.  The

3    claimant's current medications have been used for substantial periods

4    of time which raises inferences of efficacy and toleration.  There are

5    multiple other medications in the nonsteroidal anti-inflammatory and

6    analgesic armamentaria which could be used should present

7    medications ever prove ineffective or possessive of untoward side

8    effects.

9  (AR at 13).

10          **2.    Analysis**

11       A claimant bears the burden of demonstrating that her use of medications

12  caused a disabling impairment.  See Miller v. Heckler, 770 F.2d 845, 849 (9th

13  Cir.1985) (claimant failed to meet burden of proving medication impaired his

14  ability to work because he produced no clinical evidence).  Plaintiff offers no

15  objective evidence that her medications affected her in the ways that she claims,

16  let alone that they interfered with her ability to work.  See Osenbrock v. Apfel,

17  240 F.3d 1157, 1164 (9th Cir. 2001) (Side effects not "severe enough to interfere

18  with [plaintiff's] ability to work" are properly excluded from consideration).  The

19  only evidence regarding these alleged side effects consists of plaintiff's own

20  statements to the Administration.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217

21  (9th Cir. 2005) (ALJ did not err in failing to "explicitly address the drowsiness

22  side-effect of [claimant's] medication" in making an RFC determination as "the

23  ALJ took into account those limitations for which there was record support that

24  did not depend on [the claimant's] subjective complaints").  While plaintiff's

25  statements and testimony cannot be rejected solely because the objective medical

26  evidence does not support the severity of her impairment, the ALJ, as noted above,

27  properly rejected her testimony by using ordinary techniques of credibility

28  evaluation, and by providing specific, clear and convincing reasons, supported  for

1   by the record, that her testimony was not credible.  See Thomas, 278 F.3d at 960

2   (citation and internal quotation marks omitted).  As noted above, the ALJ also

3   specifically addressed plaintiff's assertions regarding side effects and properly

4   rejected them.

5         Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

6         **D.    Lack of Vocational Expert Testimony**

7         Plaintiff's final argument is that the ALJ's step five determination was

8   improper because the ALJ was required to obtain and consider a vocational

9   expert's testimony.  (Plaintiff's Motion at 8-9).

10        **1.    Applicable Law**

11        At step five of the sequential analysis, the Commissioner has the burden to

12  demonstrate that the claimant can perform some other work that exists in

13  "significant numbers" in the national economy, taking into account the claimant's

14  residual functional capacity, age, education, and work experience.  Tackett, 180

15  F.3d at 1100 (citing 20 C.F.R § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A).  The

16  Commissioner may satisfy this burden, depending upon the circumstances, by the

17  testimony of a vocational expert or by reference to the Medical-Vocational

18  Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly

19  known as "the Grids").  Osenbrock, 240 F.3d at 1162 (citing Tackett).

20        When a claimant suffers only exertional (strength-related)  limitations, the

21  ALJ must consult the Grids.  Lounsbury v. Barnhart, 468 F.3d 1111, 1115 (9th

22  Cir.), as amended (2006).  When a claimant suffers only non-exertional

23  limitations, the Grids are inappropriate and the ALJ must rely on other evidence.

24  Id.  When a claimant suffers from both exertional and nonexertional limitations,

25  the ALJ must first determine whether the Grids mandate a finding of disability

26  with respect to exertional limitations.  See Lounsbury, 468 F.3d at 1116; Cooper

27  v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).  If so, the claimant must be

28  awarded benefits.  Cooper, 880 F.2d at 1155.  If not, and if the claimant suffers

1   from significant and sufficiently severe non-exertional limitations, not accounted

2   for in the Grids, the ALJ must take the testimony of a vocational expert.[6]  Hoopai

3   v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

4        Nonexertional limitations include difficulties in manipulative or postural

5   functions (*e.g.*, reaching, handling, stooping, or crouching).  20 C.F.R. § 416.969a

6   (c)(1).

7                    **2.    Analysis**

8        Here, as discussed above, the ALJ found that plaintiff could perform light

9   exertional work.  (AR 11).  Based on plaintiff's residual functional capacity to

10  perform light work, age, education, and work experience, the ALJ found plaintiff

11  was not disabled pursuant to Rule 202.17 of the Grids.  (AR 13-14).  To justify his

12  reliance upon the Grids, the ALJ relied on authority stating that if a claimant could

13  occasionally stoop, crouch or bend, as plaintiff can, the light job base would be

14  left virtually intact.  (AR 14; see also SSR 83-14, 85-15).  For claimants who have

15  non-exertional limitations, such as stooping, as plaintiff does, SSR 85-15

16  provides:  "If a person can stoop occasionally (from very little up to one-third of

17  the time) in order to lift objects, the sedentary and light occupational base is

18  virtually intact."  Moreover, SSR 83-14 provides:

19          [T]o perform substantially all of the exertional requirements of most

20          sedentary and light jobs, a person would not need to crouch and

21          would need to stoop only occasionally (from very little up to one-

22          third of the time, depending on the particular job).

23  ///

24

25

26  ────────────────

27  [6]An ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to the make the Grids inapplicable to the

28  particular case.  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).  The severity of limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two.  Id.

                                    15

1  Thus, the ALJ properly determined that plaintiff's non-exertional limitations, *i.e.*,
2  her inability to perform more than occasional stooping, crouching, and bending,
3  did not significantly limit the range of light exertional work.

4      Accordingly, the ALJ's reliance on the Grids was proper and testimony
5  from a vocational expert was not required.

6  **V.    CONCLUSION**

7      For the foregoing reasons, the decision of the Commissioner of Social Security
8  is AFFIRMED.

9      LET JUDGMENT BE ENTERED ACCORDINGLY.

10  DATED:   March 19, 2009

11                                    _____/s/_____

12                                    Honorable Jacqueline Chooljian
                                      UNITED STATES MAGISTRATE JUDGE